IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **WMS INDUSTRIES, INC.** | § | **PLAINTIFF** |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 1:06CV977-LG-JMR** |
| | § | |
| **FEDERAL INSURANCE COMPANY** | § | **DEFENDANT** |

## MEMORANDUM OPINION AND ORDER DENYING SUMMARY JUDGMENT

BEFORE THE COURT is Defendant Federal Insurance Company's Motion for Summary Judgment [181]. Plaintiff WMS Industries, Inc., initiated this bad faith action against its property and business income insurer Federal, following a dispute over WMS's Hurricane Katrina claims. While the parties agree that the Business Income/Extra Expenses ("BI/EE") coverage applies, they disagree to what extent. The Court has considered the parties' submissions, the record, and the relevant legal authority. The motion is denied.

### FACTS AND PROCEDURAL HISTORY

WMS manufactures electronic slot machines in Waukegan, Illinois. WMS has a distribution facility in Gulfport, Mississippi, ("Premises 24"), which services its Mississippi and Louisiana casino customers. From this facility, WMS sells, leases, and installs the machines and sells conversion kits and parts to these casinos. Depending on the contract, the leased "stand alone" machines are rented for either a set amount per day, or a percentage of the money wagered on each machine.

In addition, Premises 24 operates and monitors its Wide Area Progressive ("WAP") network for its Mississippi casino customers. By law, the WAP monitoring facility is required to be in Mississippi. The WAP network consists of a group of inter-casino linked slot machines,

which contribute to a shared progressive jackpot. For every wager placed on a particular[1] WAP slot machine, the progressive jackpot for all participating WAP machines in all participating Mississippi casinos is increased immediately. WMS leases these WAP machines to the respective casino for a percentage of the wagers placed on each such machine. A customer will place a bet on the particular machine. The slot machine electronically transmits this data to the WAP monitoring facility in Gulfport. Its computers record the coin-in information, calculate the new progressive jackpot total, and calculate the amount of that wager owed to WMS as rent. The Gulfport facility computers then transmit the new jackpot information to all participating WAP machines and overhead signs[2] in all participating casinos. The Gulfport facility also transmits the rental information to the Waukegan office, which will in turn invoice the casino for that amount. In the event a jackpot is won on any WAP machine, the monitoring facility computer, upon receipt of that information, electronically resets the jackpot amounts on all relevant machines. WMS employees provide twenty-four hour monitoring of all activity on the WAP network, from the monitoring facility.

To protect Premises 24's business income, WMS purchased insurance from Federal. WMS was insured up to $100,000,000 for BI/EE coverage. The policy provided additional business income coverages, with lesser limits, as well. For example, there was Loss of Utilities coverage, which covered a loss of operations from a loss of utilities (power, telephone, etc.).

---

[1] For example, all the Men in Black WAP slot machines participate in the Men in Black progressive jackpot, while all the Monopoly machines participate in the Monopoly progressive jackpot, etc.

[2] In some instances, each slot machine displays the progressive jackpot amount. In others, one large overhead sign will display this information over a designated set of slot machines.

There was Dependent Business Premises coverage, which covered loss of operations from damage to customer's premises, for example. This policy was in force at the time of Hurricane Katrina.

On August 29, 2005, Katrina struck the Mississippi Gulf Coast. Katrina caused physical damage to the Gulfport facility, as well as to eleven[3] of its casino customers in Mississippi. The damage to Premises 24 included a damaged roof, doors, and exterior glass, computers and servers, and interior water damage. It is undisputed that the damage caused an impairment of operations, resulting in lost business income and extra expenses.

The Mississippi Gaming Commission temporarily allowed WMS to relocate its WAP monitoring facility to Reno, Nevada, which WMS did on September 11. WAP operations thus resumed for the fifteen "undamaged"[4] casino customers. On October 21, WMS's Gulfport landlord sent it a letter that Premises 24 was ready for re-occupancy. On November 14, WMS moved back. On December 2, it resumed WAP monitoring from the Gulfport facility, consistent with Mississippi regulations.

WMS filed a claim for, among other things, $39.3 million in lost income, and several hundred thousand dollars in extra expenses. Federal denied that BI/EE coverage applied and paid $1,000,000 in Dependent Business Premises and $54,744.36 in Loss of Utilities coverage, and paid a portion of the extra expense claim. After Federal concluded that over six million dollars in lost income was associated with the "damaged" casinos, it paid the $1,000,000 for this loss. The $54,744.36 was for the "undamaged" casinos.

---

[3]These are located in Biloxi, Bay St. Louis, and Gulfport.

[4]These are located in Vicksburg, Tunica, Greenville, Philadelphia, and Lula.

**DISCUSSION**

STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The Court must view the evidence in the light most favorable to the non-moving party. *Abarca v. Metro. Transit. Auth.*, 404 F.3d 938, 940 (5th Cir. 2005). A "material fact" is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute about a material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

The party that bears the burden of proof at trial also bears the burden of proof at the summary judgment stage. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 325. Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Id.* at 324-25. "[W]hen a motion for summary judgment is made and supported . . . an adverse party may not rest upon . . . mere allegations or denials . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

Federal argues that while it should have paid under the BI/EE portion of the policy, there are no damages resulting from this breach. Federal maintains that the only losses covered by the

BI/EE provision are those caused by an impairment of operations that is caused by property damage at Premises 24.  Federal contends these losses were only incurred from August 29, through September 11, 2005.  According to Federal, it has paid all sums incurred during this period.  WMS denies that Federal has paid all sums due.  WMS contends that once Katrina damage occurred at Premises 24 and initially caused an impairment to operations, this coverage extended until all operations are restored to pre-Katrina levels, well beyond September 11.

The BI/EE provision of the policy provides what it pays for and how long it pays:

**Premises Coverages**  The following Premises Coverages apply only at those premises for which a Limit Of Insurance applicable to such coverage is shown in the Declarations.

Except as otherwise provided, direct physical loss or damage must:

- be caused by or result from a **covered peril**; and

- occur at, or within 1,000 feet of, the premises, other than a **dependent business premises**, shown in the Declarations.

Business Income And
Extra Expense

We will pay for the actual:

- **business income** loss you incur due to the actual impairment of your **operations**; and

- **extra expense** you incur due to the actual or potential impairment of your **operations**,

during the **period of restoration**, not to exceed [$100,000,000].

This actual or potential impairment of operations must be caused by or result from direct physical loss or damage by a **covered peril** to **property**, unless otherwise stated.

(Pl.'s Mot. PSJ Ex. 20 at FED 1871). "Words and phrases that appear in **bold** print have special meanings and are defined in the Property/Business Income Conditions And Definitions form included in [the] policy." *Id.* This form defines "operations" as "your business activities occurring at your premises . . . prior to the loss or damage." *Id.* at FED 1968. "Period of restoration" is "that period of time that . . . begins immediately after the time of direct physical loss or damage by a **covered peril** to **property**." (Def.'s Mot. Summ. J. Ex. Q at FED 1969). This period continues:

> until your **operations** are restored, with reasonable speed, to the level which would generate the **business income** amount that would have existed if no direct physical loss or damage occurred, including the time required to:
>
> A.     repair or replace the **property**; or
>
> B.     repair or replace the **property** to comply with the minimum standards of any enforceable . . . law that:
>
>    1.    regulates the repair or replacement of any **property**;
>
>    2.    requires the tearing down of parts of any **property** not damaged by a **covered peril**; and
>
>    3.    is in force prior to the date of the direct physical loss or damage,
>
> not to exceed [365 days], beginning on the date that . . . the lost or damaged **property** is actually repaired or replaced and your **operations** are restored.

*Id.*

A plain reading of this policy reveals that Federal is obligated to pay for (1) business income loss and extra expenses (2) that WMS incurred due to the impairment of its selling, leasing, conversion kits, parts, and WAP activities occurring at Premises 24, (3) not to exceed $100,000,000, (4) so long as this impairment of operations is caused by Katrina damage to

property at Premises 24.  Federal's obligation continues "during the **period of restoration**." This period continues (1) until the operations (pre-Katrina business activities at Premises 24) are restored, with reasonable speed, to the level which would have produced the income that would have existed had the loss not happened, and (2) the property is repaired.  This period, however, may not last longer than 365 days past the date of repair of the damaged property.  The policy thus comprehends that, although the impaired operations (and resulting loss) must be caused by property damage, the impairment and losses may continue past the date on which the property itself is restored.

      The Court will assume *arguendo* that Federal's contention is true that there were no losses caused by damage to Premises 24 property past September 11, 2005.  Nevertheless, there is evidence that Federal did not pay for all amounts incurred during this period.  Federal admits that BI/EE coverage covers all income and expense loss at least through September 11, and maintains that its $54,744.36 tender covered all the lost income for this period.  However, according to Federal's adjuster Terrence Young, this tender covers only WAP income loss from the "undamaged" casinos through September 11, 2005.  (Young Dep. at 226-27).  This testimony is supported by Federal's own accounting.  (8/1/08 Young Aff. Ex. 27); (Pl.'s Mot. PSJ Ex. 46 at PIE 09790).  It does not cover any other loss.  The evidence tends to show that the "damaged" casinos also suffered WAP income loss during this thirteen day period.  Federal agreed that the WAP income loss alone for eight of the "damaged" casinos exceeds the $1,000,000 and paid for the losses under the Dependent Business Premises coverage.  (Pl.'s Mot. PSJ Ex. 42 at FED 6307); (Pl.'s Mot. PSJ Ex. 43 at FED 2687).  Furthermore, there is evidence that the "undamaged" casino WAP loss through this date exceeds $100,000.  (Pl.'s Mot. PSJ Ex. 26);

(8/1/08 Young Aff. Ex. 27).  This evidence is sufficient to create a genuine fact issue as to whether additional amounts were due under the BI/EE coverage.

**IT IS THEREFORE ORDERED AND ADJUDGED**, that for the reasons stated above, Defendant Federal Insurance Company's Motion for Summary Judgment [181] is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 28th day of October, 2008.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE